Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000005
21-JUL-2017
10:31 AM

NO. CAAP-15-0000005

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO
BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS
SERVICING LP, Plaintiff-Appellee,
v.
GRISEL REYES-TOLEDO, Defendant-Appellant,
and
WAI KALOI AT MAKAKILO COMMUNITY ASSOCIATION,
MAKAKILO COMMUNITY ASSOCIATION, and PALEHUA
COMMUNITY ASSOCIATION, Defendants-Appellees
and
JOHN DOES 1-50, JANE DOES 1-50, DOE PARTNERSHIPS 1-50,
DOE CORPORATIONS 1-50, DOE ENTITIES 1-50, and
DOE GOVERNMENTAL UNITS 1-50, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 12-1-0668)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Leonard and Ginoza, JJ.)

Defendant-Appellant Grisel Reyes-Toledo (**Reyes-Toledo**)

appeals from the December 9, 2014 Judgment (**Judgment**) entered in

favor of Plaintiff-Appellee Bank of America, N.A., Successor by

Merger to BAC Home Loans Servicing, LP, fka Countrywide Home

Loans Servicing LP (**BOA**), by the Circuit Court of the First

Circuit (**Circuit Court**).[1]  The Hawai'i Intermediate Court of

Appeals (**ICA**) affirmed the Judgment, but concluded that it did

not have appellate jurisdiction over (1) the Circuit Court's

_____

[1]     The Honorable Bert I. Ayabe presided.

February 12, 2013 order granting BOA's motion to dismiss Reyes-Toledo's counterclaims (**Dismissal Order**), or (2) the Circuit Court's December 31, 2013 order denying reconsideration of the Dismissal Order (**Order Denying Reconsideration**). Bank of America, N.A. v. Reyes-Toledo, No. CAAP-15-0000005, 2016 WL 1092305 (Haw. App. Mar. 16, 2016) (SDO). On grant of *certiorari*, the Hawaiʻi Supreme Court vacated the ICA's Judgment on Appeal and, *inter alia*, remanded the case to the ICA for a determination of whether the Circuit Court erred in dismissing Reyes-Toledo's counterclaims. Bank of America, N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 390 P.3d 1248 (2017).

Reyes-Toledo, in her remaining points of error (E & F), contends that the Circuit Court reversibly erred (1) when it entered the Dismissal Order, which dismissed her counterclaims for wrongful foreclosure, declaratory judgment, quiet title, and unfair or deceptive acts or practices (**UDAP**), pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 12(b)(6), and (2) when it entered the Order Denying Reconsideration.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Reyes-Toledo's remaining points of error as follows:

Pursuant to HRCP Rule 8(a), a "pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for

2

the relief the pleader seeks." Moreover, the pleading "must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Marsland v. Pang, 5 Haw. App. 463, 475, 701 P.2d 175, 186 (1985) (citation omitted).

A pleading may be dismissed under HRCP Rule 12(b)(6)[2] for failure to state a claim upon which relief can be granted. However, it is well recognized that:

> [a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. We must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory. For this reason, in reviewing a circuit court's order dismissing a complaint our consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true.

In re Estate of Rogers, 103 Hawai'i 275, 280-81, 81 P.3d 1190, 1195-96 (2003) (citations, brackets, and ellipsis omitted).

---

[2] HRCP Rule 12(b) provides:

> **How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted[.] . . . If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

3

Furthermore,

> [w]hile a complaint attacked by [an HRCP] Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact).

Pavsek v. Sandvold, 127 Hawaiʻi 390, 403, 279 P.3d 55, 68 (App. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

1.    Wrongful Foreclosure

In her Counterclaim, Reyes-Toledo alleges that BOA's conduct in commencing the foreclosure was willful, malicious, and without just cause. Reyes-Toledo did not otherwise identify any specific acts committed by BOA that would make the foreclosure wrongful.

The supreme court recently recognized certain potential claims for wrongful foreclosure in Hungate v. Law Office of David B. Rosen, 139 Hawaiʻi 394, 407, 391 P.3d 1, 14 (2017). In Hungate, the supreme court articulated that "creating a cause of action [against a foreclosing mortgagee's attorney] under former HRS § 667-5[3] is not necessary to protect the interests of the

---

³    HRS § 667-5 was repealed by the legislature in 2012. 2012 Haw. Sess. Laws Act 182, § 50 at 684. Prior to its repeal, HRS § 667-5 (Supp. 2008) provided:

§667-5 Foreclosure under power of sale; notice; affidavit after sale. (a) When a power of sale is contained in a mortgage, and where the mortgagee, the mortgagee's successor in interest, or any person authorized by the power to act in the premises, desires to foreclose under power of sale upon breach of a condition of the mortgage, the mortgagee, successor, or person shall be represented by an attorney who is licensed to practice law in the State and is physically located in the State. The attorney shall:
(1)   Give notice of the mortgagee's, successor's, or

(continued...)

4

mortgagor" as "the mortgagor can protect its interest through filing a claim against the mortgagee for wrongful foreclosure." Hungate, 139 Hawaiʻi at 407, 391 P.3d at 14; see also Santiago v. Tanaka, 137 Hawaiʻi 137, 158-59, 366 P.3d 612, 633-34 (2016) (recognizing that the nonjudicial foreclosure was wrongful and that mortgagor was entitled to restitution). Furthermore, the United States Court of Appeals for the Ninth Circuit noted that:

---

[3] (...continued)

person's intention to foreclose the mortgage and of the sale of the mortgaged property, by publication of the notice once in each of three successive weeks (three publications), the last publication to be not less than fourteen days before the day of sale, in a newspaper having a general circulation in the county in which the mortgaged property lies; and

(2) Give any notices and do all acts as are authorized or required by the power contained in the mortgage.

(b) Copies of the notice required under subsection (a) shall be:

(1) Filed with the state director of taxation; and

(2) Posted on the premises not less than twenty-one days before the day of sale.

(c) Upon the request of any person entitled to notice pursuant to this section and sections 667-5.5 and 667-6, the attorney, the mortgagee, successor, or person represented by the attorney shall disclose to the requestor the following information:

(1) The amount to cure the default, together with the estimated amount of the foreclosing mortgagee's attorneys' fees and costs, and all other fees and costs estimated to be incurred by the foreclosing mortgagee related to the default prior to the auction within five business days of the request; and

(2) The sale price of the mortgaged property once auctioned.

(d) Any sale, of which notice has been given as aforesaid, may be postponed from time to time by public announcement made by the mortgagee or by some person acting on the mortgagee's behalf. Upon request made by any person who is entitled to notice pursuant to section 667-5.5 or 667-6, or this section, the mortgagee or person acting on the mortgagee's behalf shall provide the date and time of a postponed auction, or if the auction is cancelled, information that the auction was cancelled. The mortgagee within thirty days after selling the property in pursuance of the power, shall file a copy of the notice of sale and the mortgagee's affidavit, setting forth the mortgagee's acts in the premises fully and particularly, in the bureau of conveyances.

(e) The affidavit and copy of the notice shall be recorded and indexed by the registrar, in the manner provided in chapter 501 or 502, as the case may be.

(f) This section is inapplicable if the mortgagee is foreclosing as to personal property only.

5

[in] states that have recognized substantive wrongful foreclosure claims, . . . such claims typically are available after foreclosure and are premised on allegations that the borrower was not in default, or on procedural issues that resulted in damages to the borrower. *See, e.g.,* *Ed Peters Jewelry Co.*, 124 F.3d at 263 n. 8 (noting that the Massachusetts Supreme Court recognized a claim for wrongful foreclosure where no default had occurred in *Mechanics Nat'l Bank of Worcester v. Killeen*, 377 Mass. 100, 384 N.E.2d 1231, 1236 (1979)); *Fields v. Millsap & Singer, P.C.*, 295 S.W.3d 567, 571 (Mo. Ct. App. 2009) (stating that "a plaintiff seeking damages in a wrongful foreclosure action must plead and prove that when the foreclosure proceeding was begun, there was no default on its part that would give rise to a right to foreclose" (internal alteration and citation omitted)); *Gregorakos v. Wells Fargo Nat'l Ass'n*, 285 Ga. App. 744, 647 S.E.2d 289, 292 (2007) ("In Georgia, a plaintiff asserting a claim of wrongful foreclosure must establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." (internal quotation marks and alteration omitted)); *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 662 P.2d 610, 623 (1983) ("[T]he material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised.").

Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1043-44 (9th Cir. 2011) (emphasis added).

The instant case involves a pending judicial foreclosure; in other words, Reyes-Toledo asserted her wrongful foreclosure claim prior to any foreclosure or sale of the subject property. Reyes-Toledo fails to provide any authority, and we find none, to support the proposition that a wrongful foreclosure claim can be raised prior to foreclosure or the sale of the property in a judicial foreclosure. Thus, we conclude that she could prove no set of facts that would entitle her to relief based on her wrongful foreclosure claim and the Circuit Court did not err in dismissing the claim. In re Estate of Rogers, 103 Hawaiʻi at 280-81, 81 P.3d at 1195-96.

2. Declaratory Judgment

Reyes-Toledo alleged that she is entitled to declaratory relief under HRS § 632-1 (2016). In support of this

6

contention, Reyes-Toledo relies on Bain v. Metropolitan Mortgage Group, Inc., 285 P.3d 34 (Wash. 2012), arguing that Bain establishes that "MERS was just a registration system for tracking ownership of the mortgages and was not a holder of the promissory note[.]"  However, this court has rejected a nearly identical argument in Bank of America, N.A. v. Hermano, No. CAAP-13-0006069, 2016 WL 3524547 at *3 (Haw. App. June 22, 2016) (SDO), cert. denied, No. SCWC-13-0006069, 2016 WL 5231842 (Haw. Sept. 22, 2016).  This court articulated that:

> Bain was decided in the context of a non-judicial deed-of-trust foreclosure, whereas the instant case is a judicial foreclosure of a mortgage.  See Bain, 285 P.3d at 36.  Thus, the procedures and law in Bain appear to be inapplicable here.  The Bain decision was limited to whether MERS is a "beneficiary" under the language of Washington's Deed of Trust Act, thus the analysis is different. Id.; Wash. Rev. Code Ann. § 61.24.005 (West 2015). In addition, Bain is a Washington State case; upon review, we are not inclined to depart from the Hawaiʻi cases that have consistently recognized the validity of assignments of mortgages by MERS where lenders granted to MERS, as nominee for lenders and lenders' successors and assigns, the right to exercise all of those interests granted by a borrower, including the right to foreclose and sell a property and to take any action required of a lender. See Bank of Am., N.A. v. Hill, 2015 WL 6739087 at *6-7; Andrade v. U.S. Bank Nat. Ass'n, Civil No, 13-00255 LEK-KSC, 2013 WL 4552186 at *9-10 (D.Haw. Aug. 27, 2013); Camat v. Fed. Nat. Mortg. Ass'n, Civil No. 12-00149 SOM/BMK, 2012 WL 2370201 at *1, *7-8 (D. Haw. June 22, 2012); and Cooper v. Bank of New York Mellon, Civil No. 11-00241 LEK-RLP, 2011 WL 3705058 at *13 (D. Haw, Aug. 23, 2011).

Id. (footnote omitted).

Here, MERS was listed in the Mortgage as "mortgagee" and "nominee."  The terms of the Mortgage granted MERS the right to "exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument."  Therefore, we conclude that Reyes-Toledo's argument is without merit and the

7

Circuit Court did not err when it dismissed Reyes-Toledo's declaratory judgment claim.

    3.    Quiet Title

A quiet title action "may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."  HRS § 669-1 (2016). "In an action to quiet title, the burden is on the [quiet title] plaintiff to prove title in and to the land in dispute, and, absent such proof, it is unnecessary for the [quiet title] defendant to make any showing."  Maui Land & Pineapple Co. v. Infiesto, 76 Hawai'i 402, 407, 879 P.2d 507, 512 (1994) (citing State v. Zimring, 58 Haw. 106, 110, 566 P.2d 725, 729 (1977)). Moreover, "[w]hile it is not necessary for the [quiet title] plaintiff to have perfect title to establish a prima facie case, he must at least prove that he has a substantial interest in the property and that his title is superior to that of the [quiet title] defendants."  Id. at 408, 879 P.2d at 513 (citing Shilts v. Young, 643 P.2d 686, 689 (Alaska 1981)).  Thus, "[i]n order for mortgagors to quiet title against the mortgagee, the mortgagors must establish that they are the rightful owners of the property and they have paid, or are able to pay, the amount of their indebtedness."  Bank of New York Mellon v. Mazerik, No. CAAP-14-0001100, 2016 WL 6781379 at *4 (Haw. App. Nov. 16, 2016) (SDO), cert. denied, No. SCWC-14-0001100, 2017 WL 727873 (Haw. Feb. 24, 2017) (citing Caraang v. PNC Mortg., 795 F. Supp. 2d 1098, 1126 (D. Haw. 2011)).

8

Like the counterclaimant in <u>Hermano</u>, Reyes-Toledo relies on <u>Amina v. Bank of New York Mellon</u>, 2012 WL 3283513 (D. Haw. Aug. 9, 2012), to support her contention that a "borrower does not need to tender payment to allege that the promissory note and mortgage were paid where the borrower brings a quiet title action against a party, who, according to the complaint, is **not a mortgagee.**" However, as we pointed out in <u>Hermano</u>, this contention ignores a significant clarification in <u>Amina</u>, which provides:

> To be clear . . . this is not a case where Plaintiffs assert that Defendant's mortgagee status is invalid (for example, because the mortgage loan was securitized or because Defendant does not hold the note). On their own, such allegations would be insufficient to assert a quiet title claim-they admit that a defendant is a mortgagee and attack the weakness of the mortgagee's claim to the property without establishing the strength and superiority of the borrower's claim (by asserting an ability to tender).

<u>Amina</u>, 2012 WL 3283513 at *5; <u>see</u> <u>Hermano</u>, 2016 WL 3524547 at *4.

Here, Reyes-Toledo argued that BOA's mortgagee status was invalid, and that the mortgage loan was securitized. Reyes-Toledo also challenged BOA's possession of the Note. These circumstances were "specifically distinguished" in <u>Amina</u>. <u>Hermano</u>, 2016 WL 3524547 at *4. As such, Reyes-Toledo's reliance on <u>Amina</u> is misplaced. Reyes-Toledo's counterclaim does not allege that she paid, or was able to pay, the outstanding debt on her property so as to demonstrate the superiority of her claim. <u>Mazerik</u>, 2016 WL 6781379 at *5. Accordingly, we conclude that the Circuit Court did not err when it dismissed Reyes-Toledo's quiet title claim.

4.   UDAP

Under HRS § 480-2(a) (2008), "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."  Moreover, "[n]o person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by [HRS § 480-2]."  HRS § 480-2.  In order to assert a UDAP counterclaim, Reyes-Toledo must qualify as a "consumer" and the alleged unlawful conduct of BOA must involve "trade or commerce."  Hungate, 139 Hawaiʻi at 410, 391 P.3d at 17.  The supreme court has held that "an individual who purchases residential property through acquiring a loan, i.e., a 'loan borrower' is a 'consumer' committing money in a personal investment within the meaning of HRS § 480-1."  Hungate, 139 Hawaiʻi at 410, 391 P.3d at 17 (citation omitted).  Reyes-Toledo is a "loan borrower" who purchased residential real estate, and thus, is a consumer under HRS § 480-2.  See Hungate, 139 Hawaiʻi at 410, 391 P.3d at 17.  In addition, pursuant to Hawaiʻi case law, BOA's conduct in consumer financial transactions, including in the context of foreclosure proceedings, occurred in trade or commerce, i.e. the business context, and therefore falls within the purview of UDAP.  Id.; Haw. Cmty. Fed. Credit Union v. Keka, 94 Hawaiʻi 213, 227, 11 P.3d 1, 15 (2000).

Thus, we turn to whether Reyes-Toledo alleged sufficient facts that BOA engaged in unfair or deceptive acts or practices.  A practice is "unfair when it offends established

10

public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Keka, 94 Hawai'i at 228, 11 P.3d at 16 (citations omitted). "[A] deceptive act or practice is (1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material." Courbat v. Dahana Ranch, Inc., 111 Hawai'i 254, 262, 141 P.3d 427, 435 (2006) (citation, internal quotation marks and brackets omitted).

Reyes-Toledo alleged in her counterclaim that she "paid about $55,593 to [BOA] under the erroneous information, billings and assumption that [BOA] was the rightful owner of [her] mortgage loan." Reyes-Toledo also alleged, inter alia, that BOA was not the holder of the subject note at the time that the foreclosure complaint was filed and, therefore, BOA was not lawfully entitled to foreclose on the subject property. In light of the supreme court's decisions in Santiago, Hungate, and Reyes-Toledo, we cannot conclude, as a matter of law, that Reyes-Toledo has failed to state a claim, under HRS chapter 480, upon which relief can be granted. Therefore, we necessarily conclude that the Circuit Court erred in dismissing Reyes-Toledo's UDAP claim pursuant to HRCP Rule 12(b)(6).

5.    Reconsideration

Upon review of the record, Reyes-Toledo failed to present any new evidence or arguments in conjunction with her motion for reconsideration that could not have been presented

11

during the earlier adjudicated motion to dismiss.  See, e.g., Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002).  Therefore, Reyes-Toledo is not entitled to any further relief based on her request for reconsideration of the Circuit Court's dismissal of her counterclaims.

### 6.  Conclusion

In accordance with the above, in addition to the relief provided in the supreme court's opinion in Reyes-Toledo, the Circuit Court's Dismissal Order regarding Reyes-Toledo's counterclaims is affirmed in part and vacated in part.  This case is remanded to the Circuit Court for further proceedings.

DATED: Honolulu, Hawai'i, July 21, 2017.

On the briefs:

R. Steven Geshell,
for Defendant-Appellant.

David B. Rosen,
Zachary K. Kondo,
David E. McAllister,
Lloyd T. Workman,
Justin S. Moyer,
(Aldridge Pite LLP),
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

12